**Electronically Filed
Intermediate Court of Appeals
30343
19-APR-2013
08:51 AM**

NO. 30343

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JS-L, Plaintiff-Appellant, v.
IS, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(UCCJEA NO. 07-1-0003)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Reifurth, JJ.)

Plaintiff-Appellant JS-L ("Mother") appeals from the Order Denying Plaintiff's February 25, 2008 Motion for Sole Legal and Physical Custody of Minor Child, For Safeguards Upon Defendant's Visitation and Due Process Safeguards, filed January 12, 2010 ("January 12, 2010 Order Denying February 25, 2008 Motion re Custody, Visitation, and Safeguards") in the Family Court of the Fifth Circuit ("Family Court").[1]

On appeal,[2] Mother asserts that the Family Court erred in: (1) refusing to grant Plaintiff's Motion for Therapeutic Reunification, filed February 22, 2008 ("February 22, 2008 Motion for Therapeutic Reunification"); (2) denying Plaintiff's Rule 59(e) Motion to Reconsider, Alter & Amend June 10, 2008 Order on Motion for Therapeutic Reunification, and Repudiation of Purported Stipulation, filed June 13, 2008 ("June 13, 2008 Motion

---

[1] The Honorable Calvin K. Murashige presided.

[2] In her opening brief, Mother addresses various orders not identified in her Notice of Appeal. Defendant-Appellee IS ("Father") urges us to disregard Mother's challenge to orders other than the January 12, 2010 Order Denying February 25, 2008 Motion re Custody, Visitation, and Safeguards. Those orders, however, and the subsequent findings of fact ("FOF") and conclusions of law ("COL"), all relate directly to the order from which Mother appealed. Therefore, we will address Mother's arguments with regard to each of the orders. *See* Haw. R. App. P. 4(a)(3); *Ueoka v. Szymanski*, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005).

to Reconsider"); (3) "the terms of its order" regarding Plaintiff's Motion for Sole Legal and Physical Custody of Minor Child, For Safeguards Upon Defendant's Visitation and Due Process Safeguards, filed February 25, 2008 ("February 25, 2008 Motion re Custody, Visitation, and Safeguards"); (4) denying Plaintiff's Motion for Expert Assessment of Minor Child and for Leave to Conduct Investigation, filed February 25, 2008 ("February 25, 2008 Motion for Expert Assessment/Investigation"); (5) denying Plaintiff's Motion for Disqualification of Family Court Judge, filed November 18, 2008 ("November 18, 2008 Motion for Disqualification"); (6) denying Plaintiff's Motion to Strike Dr. Dianne Gerard's Report, filed November 19, 2008, "and various related oral motions" ("November 19, 2008 Motion to Strike"); (7) denying Plaintiff's Motion for Relief from Order on "Material Change in Circumstances" and Motion to Apply H.R.S. § 571-46 as Amended by Act 114 (2008), filed February 13, 2009 ("February 13, 2009 Motion for Relief from Order and to Apply HRS § 571-46"); (8) issuing its January 12, 2010 Order Denying February 25, 2008 Motion re Custody, Visitation, and Safeguards; and (9) rendering various FOF and COL in its Findings of Fact and Conclusions of Law, filed April 8, 2010 ("April 8, 2010 FOF/COL").

Upon careful review of the record and the briefs submitted by the parties, having given due consideration to the arguments advanced and the issues raised by the parties, and utilizing the grouping of the related points of error structure adopted by Mother in her opening brief to facilitate analysis, we resolve Mother's points of error as follows:[3]

   A.   Issues related to Dr. Gerard (Points of Error 1, 2, 6, and 9)

Mother contends that the Family Court's refusal to allow her to call Dr. Gerard as a witness, to subpoena Dr. Gerard's records, and to take Dr. Gerard's deposition denied her

---

[3]   Mother lists numerous FOF and COL that she claims to challenge within each of the four points-of-error groupings. She makes no argument, however, concerning the bulk of those challenged FOF or COL. Her challenge to those unaddressed FOF and COL are therefore deemed waived. *See* Haw. R. App. P. 28(b)(7).

the opportunity to contest Dr. Gerard's report ("Report") and to submit evidence related to the case.[4] Specifically, Mother contends that the court "did not allow any discovery of evidence" concerning HS, "and then held it against [Mother] that she produced no evidence."

Mother's claims with regard to Dr. Gerard ultimately fail for two reasons. First, Mother fails to draw any connection between the Family Court's decision to not allow discovery of Dr. Gerard and her Report and the court's ruling on the motion for which the Report was prepared. The Report was prepared specifically to address three very limited issues related to the February 22, 2008 Motion for Therapeutic Reunification. *See supra* note 4. Because neither party sought to re-schedule a hearing after receipt of the Report, the Family Court never ruled on the remainder of the motion. Therefore, Mother has established no connection between the Family Court's decision and any injury that Mother might have suffered.

Second, Mother is unable to demonstrate that the Report had any bearing on any other ruling in the case. With regard to the order from which the appeal is taken, and which is the focus of Mother's argument, the Family Court explained that the March 4, 2005 Findings and Order After Hearing ("March 4, 2005 Order") entered by the Superior Court of California, Marin County, was "the existing custody order in the case" and could not, therefore, be modified "unless there has been a material

---

[4] The issue of Dr. Gerard's Report arose in the context of the agreed-upon resolution of Mother's February 22, 2008 Motion for Therapeutic Reunification, which she sought to have heard on three days' notice. Father requested a continuance to allow him to file a memorandum in response. The parties discussed Mother's motion at the February 25, 2008 hearing and stipulated, instead, to have Dr. Gerard provide a report addressing (i) whether it would be in the parties' minor child's ("HS") best interest to move Mother's visitation from Oʻahu to Kauaʻi, (ii) whether it would be in HS's best interest to commence "therapeutic reunification therapy/therapeutic visitation" with Mother, and (iii) the impact on HS and Mother's relationship if either (i) or (ii) were initiated. Based on "the discussion and oral agreement reached during the February 25, 2008 hearing," the June 10, 2008 Order on Plaintiff's Motion for Therapeutic Reunification ordered that Dr. Gerard's preparation and distribution of the Report would not constitute waiver of the psychologist-client privilege or serve as a basis for any party to call Dr. Gerard as a witness, exercise any right to cross-examine her, or subpoena any of her records pertaining to HS's treatment. In addition, the order provided that after receipt of Dr. Gerard's Report, any party might re-schedule a hearing on the Motion for Therapeutic Reunification.

change in circumstances since the March 4, 2005 Order was entered __and__ a modification of the March 4, 2005 Order is [determined to be] in [HS's] best interest." Since the Report was not introduced into evidence during the trial, the Family Court found that there was no need for it to consider, and it did not consider, the Report.[5] Consequently, Mother's due process right to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest was not implicated in this case by the Family Court's rulings concerning Dr. Gerard and her Report.

As to those FOF that relate to Mother's failure to introduce evidence, Mother does not explain what information she might have found if she had been permitted to examine or conduct discovery of Dr. Gerard. Nor does she describe why she believes that Dr. Gerard had knowledge of the information that she sought or why she could not introduce such information through the examination or discovery of other witnesses.

Therefore, the Family Court did not abuse its discretion in refusing to grant the February 22, 2008 Motion for Therapeutic Reunification; denying the June 13, 2008 Motion to Reconsider; denying the November 19, 2008 Motion to Strike; or in rendering FOF 22-25, 30, 78, 81, 83, 89, 92, 94, 100-01, 104-06, 109, 111, 113, 116, 120, 127, 129, 134, 138-40, or 142, or COL 9, 11-14, 20, or 22-25 in the April 8, 2010 FOF/COL.

    B.    The recusal/disqualification issue (Points of Error 5 and 9)

"Decisions on recusal or disqualification present

---

[5] Mother challenges the Family Court's finding that the Report was not considered, asserting that the court elsewhere found that Dr. Gerard was "capable of protecting [HS]'s well-being at th[at] time." Rather than reflecting a "sweeping endorsement of Dr. Gerard's participation in the case," however, the Family Court's reference to Dr. Gerard (which the court said related as well to HS's counsel, David Donner) related narrowly to Mother's request for an assessment of HS and the court's conclusion that an assessment was unnecessary at the time. That the Family Court found that HS's interests were sufficiently represented by her lawyer and her therapist so as to make a further assessment unnecessary does not demonstrate that it was clearly erroneous for the court to find that it had not considered Dr. Gerard's Report in resolving the February 25, 2008 Motion re Custody, Visitation, and Safeguards. Neither has Mother identified any facts to support her conclusion that the Report had "poisoned the well against [Mother] for all purposes . . . ."

perhaps the ultimate test of judicial discretion and should thus lie undisturbed absent a showing of abuse of that discretion." *State v. Ross*, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998). "[M]ere erroneous or adverse rulings by the trial judge do not spell bias or prejudice and cannot be made the basis for disqualification." *Peters v. Jamieson*, 48 Hawai'i 247, 264, 397 P.2d 575, 586 (1964). As Mother presents nothing more than alleged erroneous or adverse rulings as the basis for her November 18, 2008 Motion for Disqualification, the Family Court did not err in denying the motion or in rendering FOF 142 or COL 28, 29, 33-35, 39-41, 43, or 44 in the April 8, 2010 FOF/COL. *See Chen v. Hoeflinger*, 127 Hawai'i 346, 362, 279 P.3d 11, 27 (App. 2012) (judicial bias cannot be based solely on prior adverse rulings in the same case).

    C.    Change of circumstance issues (Points of Error 3, 7, 8 and 9)

        1.    Finality of the California Orders

Hawai'i appellate courts have long held that a party seeking to modify a final custody order must first show that a material change in circumstances has occurred since the final custody order was entered. *See Nadeau v. Nadeau*, 10 Haw. App. 111, 121, 861 P.2d 754, 759 (1993) (explaining that a parent requesting a change in custody must show a change in circumstances since the entry of the prior custody order); *see also Turoff v. Turoff*, 56 Haw. 51, 55-56, 527 P.2d 1275, 1278 (1974) (determining that, where a parent requests a change in custody, the "question is whether substantial change has occurred since the initial Decision and Order requiring modification or change in the award of custody of the minor child"); *cf. In re Guardianship of Doe*, 93 Hawai'i 374, 388, 4 P.3d 508, 522 (App. 2000) ("A person seeking a change in visitation must show a material change in circumstances since the previous visitation order.")[6/] California courts recognize a similar requirement.

---

[6/]    Mother observes that the Hawai'i Supreme Court avoided holding that a change of circumstances must be established to modify custody in *Doe v. Doe*, 98 Hawai'i 144, 153, 44 P.3d 1085, 1094 (2002), and has never embraced "this 'changed circumstances' rule" since enactment of HRS § 571-46.

*In re Marriage of Burgess*, 913 P.2d 473, 481-82 (Cal. 1996) ("Ordinarily, after a judicial custody determination, the noncustodial parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare.")

Mother argues, however, that the Family Court erred by ruling that the November 22, 1999 Stipulation and Order Re: Modification ("November 22, 1999 Stipulated Order") and the March 4, 2005 Order issued by the Superior Court of California for the County of Marin (collectively, the "California Orders") were final orders requiring that Mother show a material change of circumstances to modify custody.

Although Mother rests her argument on the basis of California case law and its differentiated treatment of certain non-final stipulated and otherwise permanent custody orders,[2/] Hawai'i recognizes a similar distinction between temporary and permanent custody orders and the effect that each has on the changed circumstances requirement. *Aoki v. Aoki*, 105 Hawai'i 403, 411, 98 P.3d 274, 282 (App. 2004) ("With respect to the legal and physical custody of children, temporary decisions involve different considerations than permanent decisions.") In Hawai'i, however, temporary custody orders are issued pre-decree, while permanent custody orders are issued as part of the decree itself or follow thereafter. *Aoki*, for instance, involved a proposed modification of a pre-decree custody order, which

---

Therefore, she urges us to "reconsider and overrule the language in *Nadeau v. Nadeau* . . . and *In re Guardianship of Doe* . . . requiring proof of a change of circumstances." The supreme court noted in *Doe v. Doe* that *Nadeau* and *In re Guardianship of Doe* were inapposite "because the parties were requesting a modification in custody and were not challenging the original custody determination in the context of a post-hearing motion, as was Mother." 98 Hawai'i at 153, 44 P.3d at 1094. To the contrary, this case involves a modification of custody, similar to that sought in *Nadeau* and *In re Guardianship of Doe*. In addition, and unlike the case in *Doe v. Doe*, the Family Court in this case afforded Mother an evidentiary hearing at which to present her case for modification. Therefore, we decline to reconsider or overrule those cases.

[2/]     In California, the changed-circumstances test does not apply when custody was the product of a parties' stipulation and the order did not reflect a clear, affirmative indication that the parties intended that the result be viewed as final. *Montenegro v. Diaz*, 27 P.3d 289, 295 (Cal. 2001).

expressly awarded "temporary joint legal custody" and "temporary physical custody." *Id.* As such, "a material change in circumstances was not a prerequisite to a different 'permanent' award." *Id.*

In the instant case, Mother and Father were married on February 11, 1996, and were divorced on December 6, 1996. The November 22, 1999 Stipulated Order, albeit issued pursuant to stipulation of the parties, was issued post-decree and made no reference to "temporary" custody or any hearings to follow. Mother's counsel subsequently explained that Mother entered into the November 22, 1999 Stipulated Order because "[w]hen the opportunity arose to accept a joint custody settlement rather than risk losing [HS] altogether at a trial, [Mother] opted to do what she felt was the safest bet for [HS] at the time, given the circumstances."

The March 4, 2005 Order is even more clear in that it is both post-decree and bears no indication that it resulted from a stipulation. Indeed, the order includes the words "After Hearing" in its title. Nothing in the order or its attachments suggest that it was anything but a final order to which the changed circumstances rule would then attach. *See In re Guardianship of Doe*, 93 Hawai'i at 388, 4 P.3d at 522 (pre-trial visitation order reinstated post-trial was the "previous visitation order" from which Mother was required to show a material change in circumstances).

In sum, Mother presents no basis upon which we might conclude that the Family Court erred in holding that the post-decree California Orders were final orders requiring that Mother show a material change of circumstances to modify custody.

2.    HRS § 571-46, best interest of the child, and changed circumstances

Mother contends that the 2008 amendments to HRS § 571-46 relieved parents of any obligation to establish changed circumstances and that a plain reading of the amended statute only requires the court to determine the best interest of the child. We agree that the court must determine the best interest of the child, but we are not persuaded that the 2008 amendments

require us to abolish the application of the change of circumstances rule to the modification of post-decree child custody orders.[8]

Analytically, in any event, we discern little of actual significance in requiring a demonstration of changed circumstances as part of the post-decree best interest of the child analysis. *See Marriage of Burgess*, 913 P.2d at 482. "The changed-circumstance rule is not a different test, devised to supplant the statutory test, but an adjunct to the best-interest test." *Burchard v. Garay*, 724 P.2d 486, 488 (Cal. 1986). If a custody arrangement was previously determined to be in the child's best interest, whether the consequence of a stipulation or an evidentiary hearing, then, logically, some change in circumstances must have occurred for the court to conclude that an alternative arrangement is now in the child's best interest. Moreover, requiring such a determination as a threshold matter promotes judicial economy. *See id.* ("The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.")

Explicitly requiring that changed circumstances be identified as a threshold issue in the best interest of the child analysis merely incorporates the law of the case principle that the parties may not relitigate issues that have previously been determined between them in the same case. *See Wong v. City and Cnty. of Honolulu*, 66 Haw. 389, 395, 665 P.2d 157, 162 (1983). Since an existing post-decree custody order issued after a hearing already reflects the court's determination of the child's best interest, the non-custodial parent will not be able to establish that the child's best interest requires a change in custody if she cannot establish that the context in which the motion arises is materially different from the context as of the time of the prior decision.

Accordingly, the Family Court did not err in requiring

---

[8]    By far, the most significant aspect of these amendments enumerated a multitude of factors to be considered in determining the best interest of the child. *See* 2008 Haw. Sess. Laws Act 114, § 2 at 304-07. Such additional refinement, while perhaps providing some indicia of what might constitute a material change in circumstances, in no way suggests that the change of circumstances rule should now be invalidated.

that Mother demonstrate changed circumstances before it would proceed to the remainder of its best-interest-of-the-child analysis.

3. Material change in circumstances

Mother contends that the court erred in issuing FOF 44-127, and COL 7 because she "undoubtedly established a material change of circumstances" and asserts sixteen facts which she alleges amount to a material change of circumstances to support that contention. The Family Court's April 8, 2010 FOF explicitly addressed a majority of the sixteen asserted facts and found that Mother failed to show that a material change in circumstances had occurred since the entry of the March 4, 2005 Order.

Based on our careful review of the record of these proceedings, we conclude that the Family Court's findings of fact are grounded in substantial evidence and, therefore, are not clearly erroneous.

The only relevant alleged facts listed by Mother that the court did not explicitly address are those numbered 5 and 6, which allege that "[t]here is a California court order prohibiting [IS's father] from being in [IS's girlfriend's daughter's] presence"; and "[t]hat order is ignored by [IS and his father]."[9] Mother, however, failed to introduce the alleged order into the record or to establish any connection between the allegations (which related to HS's grandfather and IS's girlfriend's daughter) and HS; thus, there was no evidence before the Family Court to establish whether the alleged order constituted a material change in circumstances. It was not clearly erroneous for the Family Court to conclude that Mother had failed to show that a material change in circumstances had occurred since the entry of the March 4, 2005 Order, and, therefore, the court did not err in denying Mother's February 25, 2008 Motion re Custody, Visitation, and Safeguards.

_____

[9] We decline to pass on the Family Court's evaluation of IS's girlfriend's testimony. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." *In re Doe*, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (ellipsis, brackets, internal quotation marks, and citations omitted).

Findings of fact by the Family Court are presumptively correct and the party seeking to overturn them has the burden of pointing out specifically wherein the findings are clearly erroneous. *Rogers v. Pedro*, 3 Haw. App. 136, 139, 642 P.2d 549, 552 (1982). Aside from restating her alleged change in circumstances, Mother has failed to provide the court with any arguments or evidence that would negate any of the Family Court's FOFs or COLs. Accordingly, the Family Court's FOFs are not clearly erroneous. Furthermore, the Family Court's COLs are not wrong, but rather are supported by the Family Court's FOFs and reflect an application of the correct rule of law. *Chun v. Bd. of Trs. of Emps.' Ret. Sys. of the State of Haw.*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005).

Therefore, the Family Court did not err in the terms of its order regarding the February 25, 2008 Motion re Custody, Visitation, and Safeguards; in denying the February 13, 2009 Motion for Relief from Order and to Apply HRS § 571-46; in its January 12, 2010 Order Denying February 25, 2008 Motion re Custody, Visitation, and Safeguards; or in rendering FOF 9, 14, 15, 45-47, 53, 54, 63, 65, 67-73, 78, 81, 83, 87, 89, 92, 94, 100, 101, 104-06, 109, 111, 113, 116, 117, 120, 121, 127, 129, 134, 135, 137, 138-40, or 142, or COL, 2-9, 11-14, 16, 17, 19, 20, 23-25, 28, 29, 33-35, 39-41, 43, or 44 in the April 8, 2010 FOF/COL.

D.    The Evaluation/Investigation Issue (Points of Error 4 and 9)

Mother's final argument on appeal is that the Family Court erred in denying her February 25, 2008 Motion for Expert Assessment/Investigation. Mother argues that "[g]iven all that [HS] has experienced and the deterioration in her relationship with her mother, it is axiomatic that good cause existed for such an evaluation." Mother does not identify any experience to which she refers, but presumably it includes Mother's abduction and concealment of HS for more than three years, which Mother explained was the consequence of her belief that HS was being abused by her Father.

While any parent's firmly held belief that someone was and may still be abusing his or her child and that his or her relationship with that child is deteriorating is of grave significance to the affected parent, it is not therefore "axiomatic" that another assessment or evaluation of the child is necessary. Mother's single-paragraph argument on appeal does not make the case that the Family Court disregarded rules or principles of law or practice or that its decision clearly exceeded the bounds of reason. *See Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006).

To the contrary, the Family Court's decision was well-grounded. The July 8, 2008 Order Denying Plaintiff's February 25, 2008 Motion for Expert Assessment of Minor Child and for Leave to Conduct Investigation reflects that the court considered a variety of sources, including (i) Minor's Opposition to Plaintiff's Request That She Undergo a Psychological Evaluation and Appointment of Robert Geffner as a Neutral Evaluator, filed on April 7, 2008, and (ii) Minor's Counsel's Joinder in Defendant's Memorandum in Response to Plaintiff's Reply to Defendant's Opposition to Motion for an Assessment of the Child, and Re What Issues are yet to be Determined on Their Merits, Including Custody, Visitation, Exposure to Domestic Violence, Suspected Child Sexual Abuse and Neglect, etc., filed on June 5, 2008, in concluding that it was "not in the best interest of [HS] to be subjected to further assessments, evaluations, and/or forensic interviews."

Mother summarily argues on appeal that "Dr. Geffner's credentials are impeccable, and the critical questions left unanswered in this case are very germane to [HS's] welfare." Standing alone, the credentials of Mother's proffered expert have nothing to do with the best interest of HS, nor do they have any effect on a finding of good cause. Nowhere does Mother explain what "critical questions" remain in this case or why good cause exists to further assess HS. Thus, Mother fails to provide a sufficient basis for us to find error.

Therefore, the Family Court did not err in denying the February 25, 2008 Motion for Expert Assessment/Investigation or

11

in rendering FOF 65 or 140, or COL 22-25 in the April 8, 2010 FOF/COL.

E.    Conclusion

The Order Denying Plaintiff's February 25, 2008 Motion for Sole Legal and Physical Custody of Minor Child, for Safeguards Upon Defendant's Visitation and Due Process Safeguards, filed January 12, 2010 in the Family Court of the Fifth Circuit, is affirmed.

DATED:   Honolulu, Hawai'i, April 19, 2013.

On the briefs:

Stacy Joroff and
Richard L. Ducote
for Plaintiff-Appellant

Charles T. Kleintop and
Dyan M. Medeiros
(Kleintop, Luria & Medeiros)
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge

12